## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINE BRYANT on behalf of herself and all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-06622 |
| | ) | |
| vs. | ) | Honorable Virginia M. Kendall |
| | ) | |
| COMPASS GROUP USA, INC. and 365 RETAIL MARKETS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF HER REQUEST FOR ATTORNEY'S FEES, LITIGATION COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATION COSTS

## TABLE OF CONTENTS

I.     Introduction ................................................................................................................ 1

II.    Procedural History ..................................................................................................... 1

III.   Settlement Class Counsel Negotiated a Settlement Structure that Includes No Reversion on Uncashed Checks and No Cy Pres distribution ............................................. 4

IV.   Settlement Class Counsel Expended Significant Effort Issuing Over 260 Subpoenas to Obtain Contact Information For Settlement Class Members ........................................... 4

V.    Settlement Class Counsel are Entitled to Payment of Their Reasonable Attorney's Fees . 6

     A.    The Court Should Award Attorney's Fees as a Percentage of the Fund ............... 6

     B.    Analysis of the Market for Legal Services Supports Plaintiff's Request .............. 9

     C.    The Risk of Non-Payment Supports the Requested Attorney's Fee Award ........ 11

     D.    The Benefits Conferred Upon Settlement Class Members Justify the Requested Award ..................................................................................................... 12

     E.    The Attorney's Fee Request Satisfies the *Redman* Ratio Test ............................ 14

     F.    Settlement Class Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check ........................................................................ 15

VI.   The Payment of Settlement Class Counsel's Litigation Expenses is Appropriate ........... 16

VII.  The Class Representative Merits Her Service Award ...................................................... 17

VIII. The Payment of the Settlement Administrator's Expenses is Appropriate ...................... 19

IX.   Conclusion ................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*In re Amino Acid Lysine Antitrust Litig.*,
   No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ................................ 8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................................. 8

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................ 7

*Briggs v. PNC Fin. Services Grp., Inc.*,
   No. 15 C 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ........................ 10, 18

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) ............................................................................. 2

*Bryant v. Compass Grp. USA, Inc.*,
   No. 19 Civ. 6622, 2020 WL 7013963 (N.D. Ill. Nov. 29, 2020) ......................... 2

*Bryant v. Compass Grp. USA, Inc.*,
   No. 20-1443, 2020 WL 6534581 (7th Cir. June 30, 2020) ................................ 2

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ............................................................................... 7

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .......................................................................... 17

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................................................ 10, 16

*Davis v. Heartland Employment Services, LLC*,
   No. 19-cv-00680, ECF No. 130 (N.D. Ill. Oct. 25, 2021) ............................. 11, 18

*Dixon v. The Wash. & Jane Smith Home*,
   1:17-cv-8033, ECF No. 103 (N.D. Ill. Aug. 20, 2019) ..................................... 18

*Dobbs v. DePuy Orthopaedics, Inc.*,
   885 F.3d 455 (7th Cir. 2018) ........................................................................... 10

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ........................................................................... 14

*In re FedEx Ground Package System, Inc. Employment Practices Litig.*,
   251 F. Supp. 3d 1225 (N.D. Ind. 2017) ........................................................ 7, 15

*Florin v. Nationsbank of Georgia, N.A.*,
   34 F.3d at 564 (7th Cir. 1994) ..................................................................... 7, 8

*Gaskill v. Gordon*,
    942 F. Supp. 382 (N.D. Ill. 1996) ......................................................................... 8, 10

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ....................................................................................... 9

*Heekin v. Anthem, Inc.*,
    No. 05 Civ. 1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ........................... 16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................................. 8

*Kaplan v. Houlihan Smith & Co.*,
    No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) .............................. 7

*Kirchoff v. Flynn*,
    786 F. 2d 320 (7th Cir. 1986) ................................................................................... 9

*Kusinski v. ADP, LLC*,
    No. 17-CH-12364 (Cir. Ct. Cook County) (Feb. 10, 2021) .............................. 11, 13

*Marshall v. Life Time Fitness, Inc.*,
    No. 17-CH-14262 (Cir. Ct. Cook County) (Aug. 7, 2019) ............................... 11, 12

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .................................................................................. 12

*McDaniel v. Qwest Commc'ns Corp.*,
    No. 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ........................... 7, 10

*Miracle-Pond v. Shutterfly, Inc.*,
    19-CH-07050 (Cook Cnty.) ..................................................................................... 13

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) .................................................................................... 4

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ........................................................................ 4, 14, 15

*Prelipceanu v. Jumio Corp.*,
    No. 18-CH-15883 (Cir. Ct. Cook County) (July 21, 2020) .............................. 11, 13

*Prena v. BMO Fin. Corp.*,
    No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .............................. 10

*Primax Recoveries, Inc. v. Sevilla*,
    324 F.3d 544 (7th Cir. 2003) .................................................................................... 7

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F. 3d 283 (3d Cir. 1998) .................................................................................... 9

*Ramah Navajo Chapter v. Babbitt,*
    50 F. Supp. 2d 1091 (D.N.M. 1999) ...................................................................... 14

*In re Ravisent Techs., Inc. Sec. Litig.,*
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ........................................................... 13

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir.2014) ............................................................... 10, 14, 15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
    No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .............................. 10

*Roach v. Walmart Inc.,*
    2019-CH-01107 (Cir. Ct. Cook County) (June 16, 2021) .................................... 11

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ........................................................... 15

*Skelton v. G.M. Corp.,*
    860 F.2d 250 (7th Cir. 1988) ............................................................................... 7

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ...................................................................... 7, 9, 11

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ............................................................................ 8, 9

*In re Synthroid Mktg. Litig.,*
    325 F.3d 974 (7th Cir. 2003) ............................................................................... 7

*Taubenfeld v. Aon Corp.,*
    415 F.3d 597 (7th Cir. 2005) .......................................................................... 9, 11

*Thome v. NovaTime Tech., Inc.,*
    1:19-cv-06256 (N.D. Ill.) .................................................................................. 13

*In re Trans Union Corp. Privacy Litig.,*
    No. 00 Civ. 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ............................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 7

*Williams v. Rohm & Haas Pension Plan,*
    658 F.3d 629 (7th Cir. 2011) ........................................................................ 15, 16

*Wright v. Nationstar Mortgage LLC,*
    No. 14 Civ. 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) ........... 15, 16

*Zhirovetskiy v. Zayo Group, LLC,*
    17-CH-09323 (Cook Cnty.) (Apr. 8, 2019) ......................................................... 18

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 C 8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ............................................ 18, 19

**Statutes**

740 ILCS 14/15(a), (b) ................................................................................................................. 1

740 ILCS 14/20(1) ....................................................................................................................... 12

## I.     Introduction

The central consideration in determining the reasonableness of attorney's fees in class action litigation is what class counsel achieved for the members of the class. Here, the result achieved is outstanding. The entire $6.8 million Gross Fund[1] will be distributed to Settlement Class Participants with no reversion to Defendants. As a result, Plaintiff's request for one-third of the Gross Fund in attorney's fees (after the payment of litigation costs, settlement administration costs, and a service award to the Settlement Class Representative) and $12,795.89 in litigation costs should be granted. The fairness and reasonableness of Plaintiff's request for attorney's fees is further underscored by the fact that it is consistent with the standard contingent fee awards in the Northern District of Illinois and in other BIPA litigation and because it falls well within the permissible *Redman* Ratio.

## II.    Procedural History

This lawsuit has an extensive procedural history. Plaintiff filed this lawsuit in the Circuit Court of Cook County, Chancery Division, on August 23, 2019. Plaintiff alleged that Compass violated BIPA by collecting and possessing fingerprint data from Illinois residents through its vending machine systems. In particular, Plaintiff alleged that Compass violated BIPA in two ways: (1) collecting biometric fingerprint identifiers and information from her and other Illinois residents without following BIPA's informed written consent procedures; and (2) possessing fingerprint identifiers and information without establishing a publicly available data retention schedule and destruction policy. 740 ILCS 14/15(a), (b).

---

[1]     All capitalized terms are defined in the Parties' Class Action Settlement Agreement, which is attached as Exhibit 1 to Plaintiff's Memorandum of Law in Support of Her Unopposed Motion for Preliminary Approval of Class Action Settlement. See ECF No. 87-1.

Compass removed this case to the United States District Court for the Northern District of Illinois based on the Class Action Fairness Act.

On January 28, 2020, this Court granted Plaintiff's Motion to Remand based on lack of Article III standing. Compass filed a Petition for Permission to Appeal with the Seventh Circuit, which was granted. The Seventh Circuit reversed, in part, finding that Plaintiff's claims for unlawful collection of her biometric data satisfy the injury-in-fact requirement of Article III standing. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020). The Seventh Circuit found that Plaintiff's second claim – for failure to establish a publicly available data retention/destruction policy under Section 15(a) of BIPA – was insufficient for standing. *Id.* at 626. Compass then filed a Petition for Rehearing *En Banc* or, in the Alternative, Panel Rehearing on the Section 15(a) claim ruling. The Seventh Circuit denied the Petition but clarified that its holding did not address a failure to *follow* a required data retention/destruction policy. 2020 WL 6534581, at *1 (7th Cir. June 30, 2020).

Following remand, Bryant filed an amended complaint alleging that Compass failed to timely destroy her biometric data as required by Section 15(a). Compass filed a Motion to Dismiss, arguing that Plaintiff's claims were untimely, that BIPA is unconstitutional "special legislation," and that Plaintiff failed to state a claim for violation of Section 15(a). This Court granted the motion without prejudice as to Plaintiff's 15(a) claim but denied the motion in its entirety as to Plaintiff's 15(b) claim for unlawful collection of her biometric data. *Bryant v. Compass Grp. USA, Inc.*, No. 19 C 6622, 2020 WL 7013963 (N.D. Ill. Nov. 29, 2020). This Court followed the weight of authority and found that BIPA is subject to Illinois' five-year catch-all statute of limitations, not a one-year limitations period for "publication" of matter violating the right of privacy. *Id.* at *1. This Court also rejected Compass's constitutional challenge to BIPA, finding that the statute's

2

exceptions for certain financial institutions subject to federal privacy laws, government entities, and government contractors are "eminently reasonable." *Id.* at *3.

On December 30, 2020, Compass filed its Answer, denied the material allegations in Plaintiff's First Amended Complaint, and asserted thirteen affirmative defenses, including that Plaintiff's claims are barred by the statute of limitations, that BIPA is unconstitutional "special legislation" in violation of the Illinois Constitution, that any award of damages violated Compass's due process rights under the United States Constitution, and that the alleged technology collected neither biometric identifiers nor biometric information covered by BIPA. The Parties then served Mandatory Initial Discovery Responses and Plaintiff served additional written discovery requests. The Parties agreed to postpone formal discovery pending private mediation.

The Parties scheduled a mediation with retired Chief Judge of the United States District Court for the Northern District of Illinois, James Holderman, an experienced BIPA mediator. 365 Retail agreed to participate in the mediation because Compass asserted that it was responsible for any of Compass's alleged violations of BIPA. In advance of mediation, Compass and 365 Retail provided informal discovery on the number of proposed class members, and the Parties exchanged mediation statements with the relevant legal and factual arguments for their respective positions in the case. On April 29, 2021, the Parties participated in a day-long mediation with retired Judge Holderman and reached a settlement in principle, which is fully memorialized in the Settlement Agreement.

On June 7, 2021, as envisioned by the settlement, Plaintiff filed a Second Amended Complaint and added 365 Retail as a defendant in the lawsuit. On August 6, 2021, 365 Retail filed its Answer, denying the material allegations of the Second Amended Complaint and asserting various affirmative defenses.

This Court granted preliminary approval of the Settlement on November 2, 2021.

III. **Settlement Class Counsel Negotiated a Settlement Structure that Includes No Reversion on Uncashed Checks and No Cy Pres distribution**

The Settlement includes a major structural feature that benefits Settlement Class Members. The Settlement includes no reversion on uncashed checks and no *cy pres* distribution. Settlement, § III.9, ECF No. 87-1.

Although the Seventh Circuit has never held that a "reversion provision" is "per se" unacceptable in a class settlement, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004), the risk is that a defendant will benefit from class members who do not file claims or who do not otherwise timely cash their checks. Likewise, while *cy pres* distribution is permissible in the Seventh Circuit, the first priority is to give the money to the class members when feasible. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014). Settlement Class Participants who do not request electronic payment will have 150 days to cash their settlement payments. Settlement, § III.9, ECF No. 87-1. Funds from checks not cashed by the deadline will be distributed to the Unclaimed Property Division of the Illinois Treasurer's Office. *Id.* This will enable Settlement Class Members to request their settlement payments if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-general (last visited Oct. 26, 2021) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

IV. **Settlement Class Counsel Expended Significant Effort Issuing Over 260 Subpoenas to Obtain Contact Information For Settlement Class Members**

Because Defendants only possessed names for Settlement Class Members, along with the location of where they used a Biometric Vending System, together with email addresses for approximately 45% of Settlement Class Members, the Settlement Agreement contemplated that Settlement Class Counsel would issue subpoenas to Defendants' customers to obtain additional contact information for Settlement Class Members. Declaration of Zachary C. Flowerree ¶17,

ECF No. 87-2; Ex. 1, Settlement, § III.13. Defendants assisted Settlement Class Counsel by providing Settlement Class Counsel with (1) contact information for Defendants' Customers, and (2) names and locations for users who may have enabled finger-scanning at one of Defendants' Illinois vending systems without first providing written consent. *Id.* Defendants also communicated with their customers to tell them that they may receive a subpoena for Settlement Class Member contact information. *Id.*

Settlement Class Counsel expended significant effort issuing and obtaining responses to subpoenas issued to Defendants' customers to obtain contact information for Settlement Class Members. Exhibit 1, Declaration of Maureen A. Salas ¶12 (herein "Salas Decl. ¶__"). Werman Salas P.C. prepared and the Settlement Administrator served 215 subpoenas on November 24, and an additional 8 subpoenas on December 7, 2021, via certified U.S. First Class Mail. Ex. 1, Salas Decl. ¶13. The subpoenas requested Settlement Class Members' email addresses, mailing addresses, and cell phone numbers. *Id.*; *See* ECF No. 90, Preliminary Approval Order ¶ 9 (stating where reasonably possible mail, text message, email, and Facebook the best practicable means of providing notice under the circumstances). Settlement Class Counsel created an Exhibit 1 for each subpoena, identifying the names and, to the extent available, email addresses for those individuals who used a Biometric Vending System at the customer's site. Ex. 1, Salas Decl. ¶14; *See* Plaintiff's Unopposed Motion to Compel Non-Parties' Responses to Subpoenas, Ex. A-L, ECF Nos. 100-2 through 100-13. Settlement Class Counsel provided Exhibit 1 in Microsoft Excel format to subpoena recipients upon request. Ex. 1, Salas Decl. ¶14.

Defendants' Customers were provided a twenty-one day deadline, December 15 and December 28, 2021, respectively, to comply with or otherwise respond to the subpoenas. Ex. 1, Salas Decl. ¶15. Many subpoena recipients required additional time to respond to the subpoenas,

citing year-end business closures, coronavirus outbreaks, and data accessibility issues. *Id,* ¶16. Some subpoena recipients objected to responding to the subpoenas, requiring Settlement Class Counsel to engage in the conferral process before ultimately receiving a response. Other subpoena recipients did not respond to the subpoenas, requiring Settlement Class Counsel to make multiple, additional contacts to obtain a response. *Id.* A dozen subpoena recipients did not respond at all, requiring Plaintiff to file a motion to compel responses. *Id*; ECF No. 100.

As Settlement Class Counsel received subpoena responses, Settlement Class Counsel reviewed each response for compliance. *Id.* ¶17. Following their review of the subpoena responses, Settlement Class Counsel conferred with the majority of subpoena recipients to identify whether a more complete response could be provided. *Id.* Some subpoena recipients supplemented their responses and other recipients indicated that other entities, such as predecessor and successor companies, staffing agencies, or contracting companies, were likely to be in possession of class member contact information. *Id.* ¶18. Settlement Class Counsel prepared and served an additional 41 subpoenas between January 1, 2022 and February 25, 2022. *Id.* ¶19.

In total, Settlement Class Counsel received over 275 responses and supplemental responses. Defendants did not possess any mailing addresses or telephone numbers for Settlement Class Members, and as a direct result of Settlement Class Counsel's collection efforts, the Settlement Administrator was able to mail over 36,000 notices via U.S. Mail and send over 28,000 notices via text message. Ex. 1, Salas Decl. ¶20.

**V.      Settlement Class Counsel are Entitled to Payment of Their Reasonable Attorney's Fees**

**A.      The Court Should Award Attorney's Fees as a Percentage of the Fund**

The Court should award attorney's fees as a percentage of the settlement fund made available to the Settlement Class Members. When counsel's efforts result in the creation of a

common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

The favored approach in the Seventh Circuit is to use the percentage of the fund method to award attorney's fees in common fund cases like this one. "Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003)); *see also McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2011 WL 13257336, at *3 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.") (Pallmeyer, J.).[2]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases Settlement Class Members' statutory claims to fees

---

[2]     The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

under BIPA. *See* Settlement, § III.3.b, ECF No. 87-1.

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful churning of the file to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 789-90 (7th Cir. 2001). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second

Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

### B.   Analysis of the Market for Legal Services Supports Plaintiff's Request

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton,* 504 F.3d at 692-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d at 718 (collecting cases). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F.2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998).#

Here, prior to filing the Complaint, Settlement Class Counsel executed a fee agreement with the Class Representative that entitled Settlement Class Counsel to attorney's fees equal to

one-third of any recovery. Ex. 1, Salas Decl., ¶22. The Court, therefore, knows the amount the Settlement Class Representative and Settlement Class Counsel negotiated for in the marketplace at the outset of the case. Because the Parties negotiated an attorney's fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Financial Services Group, Inc.,* No. 1:15-cv-10447, 2016 WL 7018566, at \*4 (N.D. Ill. Nov. 29, 2016) (St. Eve, J). Consistent with the fee agreement, Settlement Class Counsel is seeking just under one-third of the common fund: specifically, one-third of the amount that remains after the payment of litigation costs of $12,795.89, settlement administration costs of $105,486, and the Settlement Class Representative's requested Service Award of $10,000. Ex. 1, Salas Decl., ¶23; *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (recognizing that settlement administration costs are not a benefit to the class and generally should not be included when calculating class counsel's fee). This percentage is consistent with the low end of standard contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at \*4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; Prena v. BMO Fin. Corp.,* No. 15 C 09175, 2015 WL 2344949, at \*1 (N.D. Ill. May 15, 2015) (contingency of 33-40% is typically charged in FLSA cases); *In re Diary Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at \*4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") (Pallmeyer, J.).

The request for 32.7% of the Gross Fund, which is equal to one-third of the amount that

remains after the payment of litigation costs in the amount of $12,795.89, settlement administration costs of $105,486, and a requested Service Award of $10,000, is also reasonable because it is consistent with the percentage awarded in other class action BIPA litigation. *See, e.g., Davis v. Heartland Employment Services, LLC,* No. 19-cv-00680, ECF No. 130, (N.D. Ill.) (Oct. 25, 2021) (awarding 32.8% of $5.4 million settlement fund in BIPA class action); *Roach v. Walmart Inc.,* 2019-CH-01107 (Cir. Ct. Cook County) (June 16, 2021) (awarding one-third of $10 million common fund in BIPA class action); *Marshall v. Life Time Fitness, Inc.*, No. 17-CH-14262 (Cir. Ct. Cook County) (Aug. 7, 2019) (awarding one-third of $2.4 million settlement fund in a BIPA class action); *Prelipceanu v. Jumio Corp.*, No. 18-CH-15883 (Cir. Ct. Cook County) (July 21, 2020) (awarding 40% of $7 million settlement fund in a BIPA class action); *Kusinski v. ADP, LLC*, No. 17-CH-12364 (Cir. Ct. Cook County) (Feb. 10, 2021) (awarding 35% of $25 million settlement fund in a BIPA class action).#

### C. The Risk of Non-Payment Supports the Requested Attorney's Fee Award

Settlement Class Counsel's decision to seek the market rate is also reasonable in light of the significant risks of nonpayment that Settlement Class Counsel faced. At the outset of the litigation, Settlement Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Class Representative. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Settlement Class Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services. Ex. 1, Salas Decl., ¶21; *see Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Settlement Class Counsel faced risk in establishing that class treatment was appropriate. Even if Plaintiff prevailed on the issue of

11

class certification, she risked prevailing on liability. Plaintiff could lose in a battle of the experts who would testify over whether Defendants' technology captures "biometric identifiers" or "biometric information" under BIPA. Declaration of Zachary C. Flowerree ¶¶19-20, ECF No. 87-2. There is no controlling authority on this defense and the litigation would have been protracted and expensive. Defendants also could have prevented or greatly reduced recovery if they prevailed on their defense that BIPA is unconstitutional "special legislation" in violation of the Illinois Constitution, that any liquidated damages imposed would be excessive in light of the alleged harm and would violate Defendants' due process rights, and that the statute of limitations under BIPA is one year instead of five years. *Id.* ¶19. Given these risks, Settlement Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

### D.  The Benefits Conferred Upon Settlement Class Members Justify the Requested Award

The estimated benefit the Settlement provides Settlement Class Participants is excellent: assuming an estimated 12.5 percent claims rate, Settlement Class Participants will receive over $500 each in the Settlement. Declaration of Zachary C. Flowerree ¶19, ECF No. 87-2.  This is less than a 50 percent discount on the $1,000 per person recovery Plaintiff could have obtained if she proved a class-wide negligent violation of BIPA at trial after years of litigation. Declaration of Zachary C. Flowerree ¶19, ECF No. 87-2; 740 ILCS 14/20(1). This Settlement exceeds other BIPA class settlements where courts have granted final approval:

**BIPA Settlement Chart**

| Case | Judge | Date | Class Size Estimate | Per Class Member | Attorney Fees |
|------|-------|------|---------------------|------------------|---------------|
| *Marshall v. Life Time Fitness, Inc.*, 17-CH- | Tailor | Aug. 7, 2019 | 6,000 | $270 net per claimant[3] | One-third of $2.4 million fund |

---

[3]  The settlement also included dark web monitoring that the parties valued at $130 per class member.

| Case | Judge | Date | Class Size Estimate | Per Class Member | Attorney Fees |
|------|-------|------|---------------------|------------------|---------------|
| 14262 (Cir. Ct. Cook Cty.) | | | | | |
| *Prelipceanu v. Jumio Corp.*, 18-CH-15883 (Cook Cnty.) | Mullen | July 21, 2020 | Thousands | $262.28 net per claimant[4] | 40% of $7 million fund |
| *Kusinski v. ADP, LLC*, 17-CH-12364 (Cook Cnty.) | Atkins | Feb. 10, 2021 | 320,000 | $380.76 net per claimant[5] | 35% of $25 million fund |
| *Thome v. NovaTime Tech., Inc.*, 1:19-cv-06256 (N.D. Ill.) | Kennelly | March 8, 2021 | 68,213 | $365 Net per claimant[6] | 33.3% of $4.1 million fund |
| *Miracle-Pond v. Shutterfly, Inc.*, 19-CH-07050 (Cook Cnty.) | Mitchell | Sept. 9, 2021 | 1,552,555 | $80 net per claimant estimate | 35% of $6.75 million fund |

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* No. 00-cv-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving a settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

---

[4] The Parties' settlement agreement and filings did not disclose the number of class members in this $7 million settlement or the ultimate net per person recovery. Class Counsel's fee petition represented that "thousands" of class members had filed claims. Legal websites state that class members who submitted claims received up to $262.28 per person. *See* https://topclassactions.com/lawsuit-settlements/lawsuit-news/illinois-jumio-biometric-class-action-settlement/ (last visited Oct. 26, 2021).

[5] In their final approval motion, Plaintiffs reported the claims rate was 12.5 percent. In their preliminary approval filings, Plaintiffs estimated the claims rate at 20 percent, which would have provided approximately $250 per claimant. Legal websites reported claimants receiving $380.76 at the lower 12.5 percent claims rate. https://topclassactions.com/lawsuit-settlements/closed-settlements/1003858-adp-bipa-class-action-settlement/ (last visited Oct. 26, 2021).

[6] In the final approval motion, Plaintiff reported the claims rate was 10 percent. The settlement also allows Plaintiff to seek additional settlement funds based on an insurance policy assignment that the Defendant provided Plaintiff.

Nor will Settlement Class Members be required to provide a general release of BIPA claims to participate in the Settlement. Settlement Class Members who do not timely exclude themselves from the Settlement will provide Defendants with a release limited to claims arising out of the allegations in the Class Action Complaint. Settlement, § III.3.b, ECF No. 87-1. The absence of a general release exemplifies the results achieved for Settlement Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Settlement Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members, Settlement Class Counsel is entitled to reasonable attorney's fees of 32.7 percent of the Gross Fund.

### E.    The Attorney's Fee Request Satisfies the *Redman* Ratio Test

In 2014, the Seventh Circuit considered class action settlements with very low class member participation that were negotiated under questionable circumstances, and where only the parties and lawyers (not class members) were to benefit from the proposed settlement ("the Consumer Cases"). *Pearson,* 772 F.3d at 781-82; *Redman,* 768 F.3d at 630; *Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014). In each of the Consumer Cases, the class recovery was miniscule, the claims process was designed to discourage class participation, the claims rate was exceedingly low, and there were other indicia that class counsel had sold out the class in furtherance of class counsel's pecuniary interests. This Settlement stands in stark contrast to the Consumer Cases. It provides an outstanding result to Settlement Class Members, as described above in Sections III. and IV.D.

Based on the facts of the Consumer Cases, the Seventh Circuit instructed the district courts when approving settlements in consumer class actions to examine the ratio of the fee

requested to the fee plus what class members received (the "*Redman* Ratio test"). *See Redman*, 768 F.3d at 630; *accord Pearson,* 772 F.3d at 781-82. Under the *Redman* Ratio test, the "ratio that is relevant" in determining reasonable attorney's fees "... is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members*." *Redman,* 768 F.3d at 630 (emphasis added); *Pearson,* 772 F.3d at 781-82. Settlement Class Counsel is seeking $2,223,906 in attorney's fees. Provided the Court finally approves the terms of the Settlement, including the Service Award of $10,000, settlement administration costs in the amount of $105,486, and litigation costs of $12,795.89, the amount that will be distributed to Settlement Class Members as Settlement Payments is $4,447,812.11. Ex. 1, Salas Decl., ¶25. The ratio is 33.33% ($2,223,906 fee / $6,667,718.11 fee plus amount payable to class), which falls well within the permissible *Redman* Ratio.

F.      **Settlement Class Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check**

Settlement Class Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.,* 251 F. Supp. 3d at 1243 ("A lodestar cross-check … isn't encouraged in this circuit."); *Wright v. Nationstar Mortgage LLC,* No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (courts can skip a lodestar check); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Settlement Class Members is substantial, the entire Net Settlement Amount is available to Settlement Class Members, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Settlement Class Members. *See Williams*

15

*v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar

check is not an issue of required methodology"); *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838,

850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any

delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review

counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award,"

*Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the

lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans*

*Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009);

*Wright,* 2016 WL 4505169, at *17 ("Nor is the lodestar an accurate representation of the

hypothetical market agreement between the plaintiffs and their attorneys"). As explained above,

because Settlement Class Counsel's substantial work to date has "bought" a significant recovery

for Settlement Class Members, the Court need not analyze Settlement Class Counsel's lodestar.

## VI.     The Payment of Settlement Class Counsel's Litigation Expenses is Appropriate

The Notice of Class Action Settlement provided that Settlement Class Counsel may apply

to the Court for payment of litigation costs of up to $50,000. ECF No. 87-1 at 30. Settlement Class

Counsel seek reimbursement of actual costs in the amount of $12,795.89. The costs were incurred

as follows:

| Date | Description | Amount |
|---|---|---|
| 8/23/2019 | State Court Complaint Filing Fee | $389.25 |
| 8/27/2019 | Process Server Fee- Service of Summons | $50.00 |
| 9/11/19, 9/25/19, 10/2/20 | State Court Filing Fees | $3.75 |
| 2/13/2020 | Admission fee for Zachary C. Flowerree (Seventh Circuit) | $196.00 |
| 3/23/21, 5/7/21, 10/5/21 | Mediation Fees to Jams | $8,054.88 |

| January 2022 | Process Server Fees – Service of 3 Subpoenas | $ 245.00 |
|---|---|---|
| Costs incurred in January and February 2022 | Subpoena Fees | $2,553.00 |
| Costs incurred between April 2020 and February 2022 | Copy Costs- Appellate Briefs, Subpoena Conferral Letters, Motions to Compel Subpoena Responses | $367.95 |
| Costs incurred between September 2019 and January 2022 | Postage (United States Postal Service) | $579.83 |
| 5/12/2021 | FedEx Delivery Charges | $26.95 |
| Costs incurred between November 2020 and February 2022 | Westlaw Research | $329.28 |
| | **TOTAL** | $12,795.89 |

Ex. 1, Salas Decl. ¶26.

Settlement Class Counsel's request of that amount from the Gross Fund as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case. *Id.,* ¶27.

## VII.   The Class Representative Merits Her Service Award

Consistent with the Settlement Agreement and Notice, the Class Representative requests a Service Award of $10,000 from the Gross Fund. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award). "In deciding whether such an award is warranted, relevant factors include [1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

17

Class Representative Christine Bryant filed this case in her own name and on behalf of the proposed class. In so doing, the Class Representative accepted a risk of retaliation from future potential employers who can easily identify her through a Google search as the filer of this class action lawsuit. Because no other potential class representative filed similar lawsuits against Defendants, the Class Representative was an essential element of this Settlement. Ex. 1, Salas Decl. ¶ 29. The class benefited from a Settlement that achieved a meaningful recovery for Settlement Class Participants in exchange for a limited release. While the Class Representative was not required to expend as much time on this case as one that went deep into discovery or trial, she remained involved as Compass filed their appeal to the Seventh Circuit Court of Appeals.

Service awards of $10,000.00 are regularly approved by Illinois state and federal courts in BIPA cases, often in smaller settlements than this one. *See, e.g., Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033, ECF No. 103, ¶ 4 (N.D. Ill. Aug. 20, 2019) (approving $10,000 service award for class representative in BIPA settlement of less than $1.4 million); *Davis v. Heartland Employment Services, LLC*, No. 19-cv-00680, ECF No. 130, ¶ 13 (N.D. Ill. Oct. 25, 2021) (approving $10,000 incentive award to each of three class representatives in BIPA settlement of $5.4 million); *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cook Cnty.) (Apr. 8, 2019) (approving $10,000 service award for class representative in BIPA settlement of $990,000). So too here the Court should award the Class Representative a $10,000 Service Award.

The requested Service Award of $10,000 is also reasonable because it is less than 0.15% of the Gross Fund. This percentage is well within the range other courts have found to be reasonable. *See Briggs v. PNC Fin. Services Grp., Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at * 3 (N.D. Ill. Nov. 29, 2016) (approving a total of $25,000 in service awards, representing 0.41% of the total $6 million settlement); *see Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2015 WL

4275540, at *3 (N.D. Ill. July 13, 2015) (awarding a total of $144,000 in service awards, representing approximately 4.3% of the guaranteed settlement amount of $3,350,000).

## VIII.   The Payment of the Settlement Administrator's Expenses is Appropriate

The Settlement Administrator, Analytics Consulting, LLC's efforts have been extensive. Ex. 1, Salas Decl. ¶ 30. In addition to administering the Class Notice and claims process, it also reconciled multiple class lists produced by Defendants and merged the hundreds of subpoena responses Settlement Class Counsel received with the class lists Defendants provided. Ex. 1, Salas Decl. ¶ 31. This required the Settlement Administrator to enter data and reconcile the many, varied data formats in the subpoena responses with the Class Lists. *Id.* Plaintiff requests that the Court award the Settlement Administrator its estimated expenses of $105,486. *See* Plaintiff's Unopposed Motion to Reschedule the Final Approval Hearing, Appoint Maureen A. Salas as Additional Settlement Class Counsel, and Amend The Notice of Class Action Settlement, ECF No. 109 at 5. The Class Notice informed Settlement Class Members that the Settlement Administrator's costs were estimated to be less than $120,000. *Id.*; *see also* Order dated March 8, 2022, ECF No. 111.

## IX.   Conclusion

Settlement Class Counsel's request for an attorney's fees award of one-third of the Gross Fund, after the payment of Settlement Class Counsel's costs, settlement administration costs, and the requested Service Award, is reasonable based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Settlement Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members. Plus, the *Redman* Ratio is at the low end of the permissible range. Therefore, the Court should award Settlement Class Counsel attorneys' fees in the amount of $2,223,906, litigation costs in the amount of $12,795.89, and the Settlement Class Representative's Service Award in the amount of

$10,000. The Settlement Administrator also should be awarded the expenses it incurred in administering this Settlement.

Respectfully submitted,

Dated:  May 31, 2022

/s/Maureen A. Salas
*One of the Attorneys for Plaintiff and Settlement Class Members*

Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
**WERMAN SALAS P.C.**
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
Fax: (312) 419-1025

*Attorneys for Plaintiff and Settlement Class Members*